UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHAWNTELLE L. FISHER

          Petitioner,                                        Civil No. 10-4390 (RHK/JSM)

    v.

WARDEN NICOLE L. ENGLISH                              **REPORT AND
                                                      RECOMMENDATION**

          Respondents.

This matter is before the undersigned United States Magistrate Judge on Petitioner's September 14, 2010 Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1]. The matter has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

I.    **FACTUAL BACKGROUND**

Shawntelle L. Fisher, ("Fisher") is a federal prisoner currently incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"). Fisher has a projected release date of May 1, 2012, via good conduct time release. Declaration of Angela Buege ("Buege Decl."), ¶ 3. Attachment A [Docket Nos. 5, 5-1].

Fisher is currently serving a 46-month sentence, followed by three years of supervised release, imposed by Judge Charles A. Shaw of the United States District Court in the Eastern District of Missouri, for Social Security Fraud, in violation of 42 U.S.C. § 408(a)(7)(a). Id. During sentencing, Judge Shaw ordered that Fisher be screened for the Bureau of Prisons ("BOP") Residential Drug Abuse Program ("RDAP"). Petition for Writ of Habeas Corpus ("Petition") [Docket No. 1] at 1.

Fisher was designated to FCI Waseca on May 12, 2009.  Declaration of Tiffany Phillips ("Phillips Decl."), ¶ 2, Attachment A [Docket Nos. 4, 4-1].  On November 25, 2009, Drug Abuse Program ("DAP") staff at FCI Waseca found Fisher qualified to participate in the RDAP, and placed her on the RDAP waiting list.  Id.  DAP staff also forwarded a Request for Section 3621(e) Offense Review form to the Designation and Sentence Computation Center ("DSCC") in Grand Prairie, Texas.  Id. ¶ 2, Attachment B [Docket No. 4-2].  As a result, DSCC legal staff reviewed whether Fisher's current and prior offenses precluded her from early release pursuant to 18 U.S.C. § 3621(e).  Id. ¶ 2.  On January 26, 2010, the DSCC advised FCI Waseca DAP staff that Fisher's prior offense of Second Degree Assault, to which she pled guilty in the State of Missouri in 1995, precluded early release eligibility.  Id.  The DSCC explained that Missouri Statute §565.060, to which Fisher pled guilty, was sufficiently similar to the Federal Bureau of Investigation's ("FBI") Uniform Crime Report ("UCR") definition of Aggravated Assault, and that Aggravated Assault is a violent offense that categorically excludes an inmate from being considered for early release under the DRAP program.  Id. ¶¶ 2, 5, 7.

Fisher entered the RDAP program at FCI Waseca on January 27, 2010.  Id. ¶ 4.  According to Fisher, she was scheduled to complete the 500-hour requirement on November 2, 2010, which would have made her eligible for halfway house placement on November 3, 2010.  Petition at 1.  However, on February 3, 2010, DAP staff logged a computer entry that Fisher was ineligible for early release under 18 U.S.C. § 3621.  Phillips Decl., ¶ 4.

Fisher filed a Request for Administrative Remedy at the institutional level on May 4, 2010.  Petition, Attachment 1 [Docket No. 1-1] at pp. 7-10; Buege Decl. ¶ 4.  In this

request, Fisher argued that she had been erroneously precluded from consideration under 18 U.S.C. § 3621(e)(2)(B) because her guilty plea in 1995 in Missouri for Second Degree Assault resulted in a Suspended Imposition of Sentence ("SIS") that is not considered a conviction in Missouri.  Petition, Attachment 1 at p. 8.  According to the response received by Fisher on May 28, 2010, "DSCC Legal Staff again reviewed [Petitioner's] eligibility in response to [the] assertion this offense is not technically a conviction due to the fact [Petitioner] received a suspended imposition of sentence and successfully completed and were discharged from probation."  Id. at p. 7.  DSCC legal staff concluded that although Fisher's "commission of Second Degree Assault is not technically considered a 'conviction,' it is still considered a prior plea of guilty."  Id. Since Missouri keeps such pleas on file for use in many purposes, including law enforcement, Fisher was precluded from early release eligibility.  Id.

Fisher appealed the decision to the Regional Office on June 1, 2010.  Petition, Attachment 1 at p. 5; Buege Decl. ¶ 4.  This appeal was denied on June 11, 2010. Petition, Attachment 1 at p. 4.  Fisher then filed an appeal to the Central Office on June 24, 2010.  Petition, Attachment 1 at p. 3; Buege Decl. ¶ 4.  After extending its time to reply until August 31, 2010, the Central Office failed to respond to Fisher's appeal, which is considered a denial.  Petition, Attachment 1 at pp. 1-2; Buege Decl. ¶ 4, Attachment B [Docket No. 5-2] at p. 7.  All parties agree that Fisher has exhausted her administrative remedies.  Petition at 1; Gov't Response to Pet. at 13 [Docket No. 3]; Buege Decl. ¶ 4.

Fisher filed the instant Petition under 28 U.S.C. § 2241, alleging that the BOP erroneously excluded her from the benefit of early release pursuant to 18 U.S.C. §

3621(e) for completing the BOP's 500-hour RDAP.  In her Petition and Response to the Government's opposition, Fisher claimed that because the SIS she received as a result of her guilty plea did not constitute a "conviction" under Missouri law and 18 U.S.C. § 3621(e)(2)(B) makes no mention of a guilty plea that does not result in a conviction as grounds for exclusion, she cannot be categorically disqualified from consideration for early release on that basis.  See Petition at 1-3; Petitioner's Resp. to Gov't Resp. ("Pet.'s Resp.") at 1, 5-6.  In the same vein, Fisher contended that the BOP violated the Administrative Procedure Act ("APA") in promulgating 28 C.F.R. §550.58(a)(1)(iv) and its successor provision 28 C.F.R. §550.55 by failing to make any mention of – much less giving any rationale for, notice of and an opportunity to comment on – the categorical exclusion from early release of inmates with guilty pleas that do not result in a conviction.  Petition, at 2; Pet.'s Resp. at 2.  Fisher reasoned that the BOP's determination that her guilty plea with an SIS was equivalent to a conviction was an abuse of discretion under the APA and should be voided.  Id..

Fisher also alleged that she cannot be categorically disqualified from early release upon completion of RDAP because conviction for Second Degree Assault under Missouri law is not the same as an "aggravated assault" as set forth in 28 C.F.R. §550.55.  Petition at 3; Pet. Resp. at 1, 3-5.

By way of relief, Fisher requested the Court: (1) set aside the BOP's determination that she had been "convicted" of Second Degree Assault and was ineligible for early release upon completion of RDAP; (2) order the BOP to reconsider her eligibility for early release based on RDAP completion without regard to her 1995

guilty plea and SIS; and (3) order an evidentiary hearing.  Petition at 3; Pet. Resp. at 2, 7.

In response, the Government maintained that 28 C.F.R. §550.58 and 28 C.F.R. §550.55 were properly promulgated under the APA, and that the BOP correctly determined that Fisher was ineligible for early release under 18 U.S.C. § 3621(e)(2)(B) because she has a prior conviction for aggravated assault.  Gov't Resp. to Pet. ("Gov't Resp.") [Docket No. 3] at 4-5, 8-10.  As to the latter argument, the Government asserted that the Second Degree Assault charge to which Fisher pled guilty "was sufficiently similar to the FBI UCR definition of 'aggravated assault,'" and that while for certain purposes Missouri law does not consider a person found guilty of an offense to have a "conviction" when she receives a SIS and successfully completes probation, that does not prevent the BOP from considering the collateral consequences of that plea.  Id. at 15-16.

## II.      REGULATORY BACKGROUND

This Petition deals with the statute providing potential sentence reductions to prisoners who complete a Residential Drug Abuse Program.  Pursuant to 18 U.S.C. § 3621(b)(5), BOP "shall make available appropriate substance abuse treatment for each prisoner [BOP] determines has a treatable condition of substance addiction or abuse." Section 3621(e) offers inmates who are convicted of nonviolent offenses and successfully complete a drug treatment program, the opportunity but not the mandate for a sentence reduction as an incentive to participate in treatment.  Specifically, 18 U.S.C. § 3621(e)(2)(B) provides:

> The period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program may be

> reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must serve.

(emphasis added).  The statute does not define the phrase "convicted of a nonviolent offense."

Pursuant to its authority under §3621(e), and following notice and comment procedures, the Court finds that the BOP properly enacted 28 C.F.R. § 550.55(b), which became effective on March 16, 2009, and established some inmates as categorically ineligible for early release:

> (b)  Inmates not eligible for early release.  As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:
>
> * * *
>
> (4) Inmates who have a prior felony or misdemeanor conviction for:
>
> * * *
>
> (iv)  Aggravated Assault;
>
> * * *

28 C.F.R. § 550.55(b); see also Gatewood v. Outlaw, 560 F.3d 843, 848 (8th Cir. 2009) cert. denied, 130 S.Ct. 490 (2009) (upholding the promulgation of 28 C.F.R. § 550.58 the predecessor of 28 C.F.R. § 550.55(b)); Stevenson v. FCI Waseca, 383 Fed. Appx. 587, 588 (2010) (finding no defect in adoption of § 550.55).[1]

---

[1]      This Court has concluded that the BOP properly enacted 28 C.F.R. § 550.55(b) based on the following analysis: Subject to limited exceptions, the APA requires that an agency, including the BOP, give notice of a proposed rule, and provide at least a thirty-day period for public comment, before that rule is given effect.  See 5 U.S.C. § 553; see also United States v. DeLeon, 330 F.3d 1033, 1036 (8th Cir. 2003) ("The APA's rulemaking provisions require three steps to enact substantive rules: notice of the proposed rule, a hearing or receipt and consideration of public comments, and the publication of the new rule.").  The exceptions include "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).

The portion of 28 C.F.R. § 550.55(b)(4) at issue is a reformulation of 28 C.F.R. § 550.58 and merged three previous proposed rules that span the life of the statute.  See Proposed Rules, 28 C.F.R. Parts 545 and 550, 74 FR 1892-01, 2009 WL 76657 (Jan.

14, 2009) (describing reformulations of the regulation in 2000, 2004, 2006, and 2009, and note and comment procedures followed therein); Proposed Rules, 28 C.F.R. Parts 524 and 550, 62 FR 53690-01, 1997 WL 630755 (Oct. 15, 1997) (describing original enactment of interim rule with request for notice and comment).   The inclusion of aggravated assault as a disqualifying prior violent crime has been included in the regulation since 1997.   62 FR 53690-01 (noting original text of the interim rule, which includes past conviction for aggravated assault as a categorical exclusion).   The BOP gave proper notice of the proposed version of 28 C.F.R. § 550.58(b)(4), and provided 60 days between July 1, 2004 and August 30, 2004 for public comment before the rule was given effect.   See 74 FR 1892-01, 2009 WL 76657 (outlining comments received); 69 FR 39887-02, 2004 WL 1466970 (providing notice and soliciting comments).   The categorical exclusion eligibility rules were last considered in 2004, but did not alter inclusion of aggravated assault on the categorical exclusion list.   See Gatewood v. Outlaw, 560 F.3d 843, 848 (8th Cir. 2009) cert. denied, 130 S.Ct. 490 (2009) ("[I]n the 1997 amended interim rule, adopted in 2000 as the final rule . . .  the categories of exclusion remained constant, and the rationale continued to be the BOP's interest in protecting public safety."); Proposed Rules, 28 C.F.R. Part 550, 69 FR 39887-02, 2004 WL 1466970 (July 1, 2004) (adding prior convictions for arson and kidnaping as categorically excluding inmates in the RDAP from early release).   The BOP received and reviewed public commentary on the proposed rule.   See 74 FR 1892-01, 2009 WL 76657 (Comments on the 2004 Proposed Rule).   28 C.F.R. part 550 was finalized on January 14, 2009, and became effective on March 16, 2009.   Id.

In Gatewood, the Eighth Circuit reviewed the procedural history of Part 550 and found that appropriate notice and comment procedures had been followed.   560 F.3d at 848. Additionally, the court in Gatewood found that the BOP had consistently articulated two justifications for its rulemaking: public safety and uniformity.   Id.

While the regulation at issue in Gatewood concerned an inmate's *current* conviction, the uniformity and public safety rationales are equally applicable to past convictions of a violent crime.   The categorical exclusion of inmates with a past conviction for a violent crime, such as aggravated assault, is motivated by a concern about the "readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." Id. at 846 (quoting Lopez v. Davis, 531 U.S. 230, 244 (2001)).   The BOP has made clear this rationale since 1996: "The categories of offenses in the April 1996 amended Program Statement made it clear that the BOP decided to exclude, not only those convicted of violent offenses, but also those whose offenses, either by inherent nature *or by the manner in which they were committed*, demonstrated a potential for violent behavior that made the inmate unsuitable for early release on public safety grounds." Id. at 848 (emphasis in original).   This rationale equally applies to past convictions for violent offenses.   The decision to categorically exclude such inmates rather than relying on individual determinations also serves the BOP's interest in uniformity.   Id. at 849 ("The agency had strong interests-both substantive and administrative-in applying its substantive policy decisions uniformly to its nationwide inmate population.").

If the BOP determines that an inmate is categorically ineligible for early release under 28 C.F.R. § 550.55(b), the inquiry ends. If the BOP determines that an inmate does not fall into one of the categorically excluded categories under 28 C.F.R. § 550.55(b), it is BOP practice to evaluate the inmate individually to determine early release eligibility. See U.S. Department of Justice, Federal Bureau of Prisons, Program Statement P5331.02, Early Release Procedures under 18 U.S.C. § 3621(e) at 5 (Mar. 16, 2009), available at http://www.bop.gov/policy/progstat/5331_002.pdf ("If the inmate is not excluded from eligibility upon the DAPC's initial review, the inmate will require a § 3621(e) offense review by the DSCC legal staff."). At no time is the BOP obligated to offer any individual early release. See 18 U.S.C. § 3621(e)(2)(B) (giving the BOP the option but not the mandate for early release).

## III.   DISCUSSION

### A.   Reviewability of BOP's Decision

As an initial matter, it is not clear to this Court that it has jurisdiction to review the BOP's decision to deny Fisher consideration of early release based on her prior plea of guilty to Second Degree Assault and an SIS. In Gatewood, the Eighth Circuit stated that a determination or decision of the BOP is not reviewable by a court under the APA and specifically does not apply to "early release decisions." 560 F.3d at 846 n. 2 ("18 U.S.C. § 3625 provides that 5 U.S.C. §§ 554, 555, and 701-706 'do not apply' to early-

---

"When the agency has articulated and acted on a consistent rationale throughout the course of a lengthy informal rulemaking process, the final rule is not arbitrary and capricious was not fully iterated in the final agency action." Id. at 848.

release decisions.")).[2]   Further, the court intimated that "§ 3625 may well preclude judicial review of BOP decisions applying the final rule and Program Statement to particular inmates." Id. (citing Sesler v. Pitzer, 110 F.3d 569, 572 n. 5 (8th Cir. 1997);[3]

---

[2]     Section 554 applies to adjudications; § 555 addresses matters ancillary to agency proceedings such as appearances at agency hearings and agency subpoenas; §§ 702-706 set out the circumstances under which judicial review can be obtained (e.g. § 702 sets out that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review"; § 706 sets out the standard of review.).

[3]     In Selser, the Eighth Circuit affirmed the district court's upholding of the BOP's denial of petitioner's request for a reduction in sentence following successful completion of drug rehabilitation program as a result of his plea of guilty to the crime of using a firearm during and in relation to a drug trafficking offense, which was deemed by the BOP to be a "crime of violence," as defined in 18 U.S.C. § 924(c)(3), and thus rendered petitioner ineligible for early release.  In reaching its decision, the district court stated:

> It should be noted at the outset that Magistrate Judge Erickson did not find the BOP's categorization of Petitioner's conviction under § 934(c)(1) as a "crime of violence" completely unreviewable. The R & R correctly observed that the determination of the BOP could not be reviewed under the APA. R & R at 7-9. Not only does 18 U.S.C. § 3621 clearly state that the BOP may reduce a nonviolent offender's sentence, but Congress specifically excepted the subsection of which § 3621 is a part: "The provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625.

> Magistrate Judge Erickson recognized, however, that limited judicial review of BOP regulations promulgated pursuant to this subchapter is allowable if Petitioner states a colorable constitutional claim, since Congress apparently did not clearly express an intent to foreclose review of such claims. See Webster v. Doe, 486 U.S. 592, 603-04, 108 S.Ct. 2047, 2053-54, 100 L.Ed.2d 632 (1988).

Sesler v. Pitzer, 926 F. Supp. 130, 132 (D. Minn. 1996) (footnote omitted).  In the Eighth Circuit's decision, the court acknowledged the Government's argument that while "this Court retains limited jurisdiction to determine whether the BOP's actions exceeded the agency's statutory authority or violated the Constitution, cf. Wajda v. United States, 64 F.3d 385, 388 (8th Cir.1995) (holding that federal courts retain jurisdiction to determine whether the United States Parole Commission exceeded its statutory authority or violated the Constitution notwithstanding the federal courts' lack of jurisdiction to review substantive decisions), the BOP's decision to deny Sesler a one-year reduction of his

see also, Egan v. Hawk, 983 F. Supp. 858, 861 (D. Minn. 1997) ("It is true that Congress exempted BOP decisions carrying out § 3621(e)(2)(B) from judicial review under the APA.  See 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.").  However, as the Sesler court implicitly recognized, this Court may always review an agency interpretation of federal statute and overturn that interpretation if it is based on an impermissible construction of the statute.").

Here, Fisher is not raising a constitutional challenge,[4] and it is apparent that she is challenging BOP decision applying the final rule, 28 C.F.R. § 550.55(b)(4)(iv), to her. Thus, it may very well be that this Court has no jurisdiction to review her challenge to the BOP's decision.  Nonetheless, because this Court has determined on the merits that the BOP's determination should be upheld, the Court need not reach the jurisdictional issue at this time.

---

sentence is unreviewable."  Selser, 110 F.3d at 572 n. 5.  The appellate court did not reach the jurisdictional issue because it had concluded on the merits that "prisoners convicted of § 924(c)(1) offenses are clearly ineligible for § 3621(e)(2)(B) sentence reductions."  Id.

[4]     Fisher has properly recognized that no inmate has a liberty interest in early release under 18 U.S.C. § 3621(e)(2)(B).  See Pet. Resp. at 6.  "'[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'"  Egan 983 F. Supp. at 864 (quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979)); see also Sandin v. Connor, 515 U.S. 472, 487 (1995) (possibility of early release is not a liberty interest); Trobaugh v. Hawk, 19 Fed. Appx. 461, 462 (8th Cir. 2001) (noting that "Section 3621(e) creates no protected liberty interest in receiving a sentence reduction") (citation omitted); Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000) (language of statute allowing early release upon completion of treatment program is permissive and does not guarantee eligible inmates early release).  Accordingly, "[n]o fundamental right attaches to a discretionary privilege such as a reduction in the term of sentence."  Stanko v. Cruz, 2008 WL 4849025 at *2 (D. Minn. Nov. 6, 2008) (citations omitted).

**B.**   **BOP's Failure to Include Guilty Pleas Not Resulting in a Conviction as Categorical Exclusion or to Articulate a Rationale for Such a Categorical Exclusion**

Fisher alleged the BOP violated the APA in promulgating 28 C.F.R. § 550.55(b)(4)(iv) by failing to make any mention of, much less articulate its rationale for, the categorical exclusion from early release of inmates who had previously plead guilty to an aggravated assault that did not result in a conviction under state law.  Petition at 2; Pet. Resp. at 2, 7.  The gist of her argument is that 18 U.S.C. § 3621(e)(2)(B) permits categorical exclusion of "convictions only;" it does not make any mention of "guilty pleas not resulting in a conviction."  Pet. Resp. at 2.  Similarly, Fisher maintained that 28 C.F.R. § 550.55 "makes *no* mention of 'guilty pleas not resulting in a conviction' as a categorical exclusion."  Id. (emphasis in original).  For this proposition, Fisher cited Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009), and asserted that by failing to articulate a definition for the word "conviction" in the regulation, and by providing no notice to inmates that a guilty plea not resulting in conviction fell under § 550.55(b), the regulation was invalid under the APA.  Petition at 2-3; Pet.'s Resp. at 1-2.

"The APA provides that a reviewing court must set aside a final agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" Gatewood, 560 F.3d at 846 (quoting 5 U.S.C. § 706(2)(A) (2006)).  This standard applies "to both agency rulemaking and adjudication that is subject to the APA." Id. at 847.  Thus, the question for the Court to determine is whether the BOP's decision (or interpretation) to deem a guilty plea with a suspended imposition of sentence to be a "conviction" under 28 C.F.R. § 550.55, despite the lack of an explicit definition of

"conviction" and notice of such a definition as part of BOP agency rulemaking, is arbitrary, capricious, or an abuse of discretion.

The starting place for this Court's analysis is Lopez v. Davis, 531 U.S. 230 (2001). In Lopez, the BOP denied Lopez early release from prison based on 28 C.F.R. § 550.58 (the predecessor of § 550.55), which categorically denied early release following completion of a drug treatment program to prisoners whose felonies involved the use of a firearm. In affirming the BOP's determination, the United States Supreme Court ruled that the BOP maintains discretion to categorically exclude classes of prisoners from early release eligibility because the BOP has the authority, but not the duty, to reduce an inmate's term of imprisonment. 531 U.S. at 231-33. Thus, "[w]hen an eligible prisoner successfully completes drug treatment, the Bureau . . . has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." Lopez, 531 U.S. at 241. As discussed in footnote 1, supra, following Lopez, the Eighth Circuit held that 28 C.F.R. § 550.58 was properly promulgated, and justified by both public safety and uniformity concerns. Gatewood, 560 F.3d at 847-49. Additionally, the Eighth Circuit recently declined to overrule Gatewood, instead noting that 28 C.F.R. § 550.55(b), the current regulation, "reaffirms the challenged policy and addresses the alleged APA shortcomings" by now including a rationale for the BOP categorical exclusion policy. Stevenson, 383 Fed. Appx. at 588.

Having generally upheld the promulgation of § 550.55, the next question to address is whether the Eighth Circuit would nonetheless hold, as argued by Fisher, that the BOP was required to provide a rationale and notice and comment period for defining the term "conviction" to include a "guilty plea" that is not considered a conviction under

state law.  According to Fisher, failure to provide proper notice to inmates that conduct not resulting in a conviction categorically excludes them from consideration under § 550.55(b)(4), is an invalid exercise of agency rulemaking authority under the APA.  Pet. Resp. at 7.

This Court disagrees.  The BOP's decision to deem a guilty plea with an SIS to be a "conviction" under the regulation, while not entitled to substantial deference, is a permissive and reasonable interpretation and is neither arbitrary, capricious or an abuse of discretion.

When a statute unambiguously expresses the intent of Congress, the agency must give effect to that intent.  Chevron U.S.A. Inc. V. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).  Here, § 3621(e)(2)(B) expressly gives the BOP discretion to reduce an inmate's period of custody up to one year upon the successful completion of the RDAP.  Bellis v. Davis, 186 F.3d 1092, 1094 (8th Cir. 1999) (18 U.S.C. § 3621(e)(2) vests broad discretion in the BOP to determine which individuals are appropriate candidates for early release); see also Grove v. Federal Bureau of Prisons, 245 F.3d 743, 747 (8th Cir. 2001) ("The BOP retains broad discretion to determine who among those statutorily eligible inmates are appropriate candidates for early release.") (citing Bellis at 1094-95); United States v. Lopez-Salas, 266 F.3d 842, 848 (8th Cir. 2001) (the BOP had discretion to "categorically exclude inmates who have had INS detainers filed against them from eligibility for early release after completing the treatment program.").  However, "[b]eyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must

grant the reduction, or is forbidden to do so." Lopez, 531 U.S. at 242. Accordingly, while on the one hand, "the BOP retains discretion to promulgate additional requirements for sentence reduction eligibility, it cannot defy the plain language used by Congress," (Egan, 983 F. Supp. at 864), on the other hand, "all [this Court] must decide is whether the [BOP], the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Lopez, 531 U.S. at 242 (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995)).

If Congress has left discretion for agency action, the agency's interpretation is entitled to substantial deference under Chevron, when the agency has given advance notice of its interpretation and an opportunity for comment and input prior to its final enactment. United States v. Mead Corp., 533 U.S. 218, 230 (2001) ("Thus, the overwhelming number of our cases applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication."); In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001) ("We also note that this court has indicated that an agency's interpretation which is not subjected 'to the rigors of notice and comment' is not entitled to substantial deference.") In the Eighth Circuit, Chevron deference means the agency's regulation is given controlling weight, unless "arbitrary, capricious, or manifestly contrary to the statute." In re Old Fashioned Enters., Inc., 236 F.3d at 425.

At the same time, "[w]here an agency sets forth its own interpretation of statutory language in internal policies, and those interpretive rules have not been subject to public notice and comment under the Administrative Procedure Act, a court need not

grant the rules substantial deference." Raymer v. Cruz, 2009 WL 1924773 at *3 (D. Minn. July 2, 2009) (citing Saint Mary's Hosp. v. Leavitt, 535 F.3d 802, 807 (8th Cir. 2008); In re Old Fashioned Enters., Inc., 236 F.3d at 425). "So in the absence of more formal agency action, interpretive rulings only receive deference equal to their power to persuade." Raymer, 2009 WL 1924773 at *3 (citing Godinez-Arroyo v. Mukasey, 540 F.3d 848, 850-51 (8th Cir. 2008); Clark v. Dep't of Agriculture, 537 F.3d 934, 939-40 (8th Cir. 2008)).

Applying these principles to the case at hand, where the BOP has provided its own interpretation of the term "conviction" under 18 U.S.C. § 3621(e)(2)(B) and 28 C.F.R. § 550.55 to include a guilty plea leading to a SIS, and this interpretation has not been subject to public notice and comment, the less deferential standard of review applies. Egan, 983 F. Supp. at 861. Stated otherwise, the fact that the BOP did not include in its implementing regulation that the term "conviction" can include a guilty plea leading to a SIS does not render the regulation invalid. It simply means that this Court does not defer to or give controlling weight to the BOP's interpretation. Rather, this Court must determine whether the BOP has permissibly interpreted the statute. Based on Eighth Circuit jurisprudence, the Court concludes that the BOP properly determined that a guilty plea leading to a SIS under state law constitutes a conviction under 18 U.S.C. § 3621(e)(2)(B) and 28 C.F.R. § 550.55.

First, the Eighth Circuit has determined in similar circumstances that a SIS, which is not a conviction under Missouri law, is considered a conviction under federal law. In United States v. Henderson, pursuant to 21 U.S.C. § 841(b)(1)(A),[5] the defendant was

---

[5]   Section 841(b)(1)(A) provides that any person who commits certain drug crimes, including possession with intent to distribute 50 grams or more of cocaine base, shall be

convicted of distributing, and possessing with intent to distribute, in excess of five kilograms of cocaine  613 F.3d 1177, 1179 (8th Cir. 2010), cert. denied, --- S.Ct. ----, 2011 WL 145843 (Apr. 25, 2011).  The court upheld the imposition of a life sentence that took into account a prior drug felony that resulted in a suspended imposition of sentence which under Missouri law is not considered conviction.  Id. at 1185.  In explaining its decision, the court stated:

> According to [Petitioner], this court should still reverse because the 1989 felony resulted in a suspended imposition of sentence, which is not a conviction under Missouri law.  See State v. Lynch, 679 S.W.2d 858, 860 (Mo.1984). We have previously held that the question of what constitutes a "prior conviction" for purposes of § 841(b)(1)(A) is a matter of federal, not state, law, and . . . a suspended imposition of sentence qualifies as such a prior conviction. United States v. Craddock, 593 F.3d 699, 701 (8th Cir.2010) (prior Missouri suspended-imposition-of-sentence), distinguishing United States v. Stallings, 301 F.3d 919 (8th Cir.2002); United States v. Slicer, 361 F.3d 1085, 1087 (8th Cir.2004) (same); United States v. Franklin, 250 F.3d 653, 665 (8th Cir.2001) (same); United States v. Ortega, 150 F.3d 937, 948 (8th Cir.1998) (same).[6] The district court's error was harmless.

Id. (internal citations and quotations removed).  In Lynch, cited by the Henderson court, the defendant was convicted of second-degree burglary, imposition of his sentence was suspended by trial judge, he was placed on probation for one year, and he appealed his conviction. The Missouri Supreme Court upheld the dismissal of his appeal, finding that imposition of sentence was not a final, appealable judgment.  679 S.W.2d at 859.  The

---

sentenced to at least ten years imprisonment. However, "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years...." 21 U.S.C. § 841(b)(1)(A).

[6]     In Ortega, the defendant pled guilty to possession of methamphetamine for which he served, like Fisher, supervised probation and received a suspended imposition of sentence.  Ortega, 150 F.3d at 948.  The Eighth Circuit concluded this offense and guilty plea "qualifie[d] as a prior final felony drug conviction for purposes of section 841(b)." Id.

court defined a "suspended imposition of sentence" as: "Suspension of sentence is a suspension of active proceedings in a criminal prosecution. It is not a final judgment, or the equivalent of a nolle prosequi or discontinuance, nor does it operate as a discharge of accused."  Id. at 860 (quoting 24 C.J.S. § 1571(1)(a) (1961)).  At the same time, the court recognized that a guilty plea with a SIS can be used to impeach a defendant in a later proceeding, constitutes a prior conviction for sentencing purposes, confers upon the defendant "prior offender" status under RSMo. § 558.016,[7] and can be used for the purpose of enhancing a defendant's sentence and as an aggravating circumstance under RSMo. § 565.006.2, (repealed, Mo. Laws, S.B. 276 § 1 and replaced by § 565.032.1(3), effective July 1, 1984).  Id. at 861.

Further, the Missouri Supreme Court acknowledged that although Missouri SIS law set forth in RSMo. §§ 610.105 and 610.106 "provide[s] a procedure for closing a defendant's record and making such records inaccessible to the general public," another statute, RSMo. § 610.120, "makes available 'closed records' to the 'courts, administrative agencies, law enforcement agencies, and federal agencies for purposes of prosecution, litigation, sentencing, parole consideration and to federal agencies for

---

[7]     RSMo. § 558.016 governs extended terms for recidivism and provides in relevant part:

> 1. The court may sentence a person who has pleaded guilty to or has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a prior offender or a persistent misdemeanor offender, or to an extended term of imprisonment if it finds the defendant is a persistent offender or a dangerous offender.

> 2. A "prior offender" is one who has pleaded guilty to or has been found guilty of one felony.

***

such investigative purposes as authorized by law or presidential executive order.'"[8] Id. at 861-62.[9]

While neither this Court nor the BOP are interpreting 28 U.S.C. § 841(b)(1)(A), the reasoning articulated by the Eighth Circuit in Henderson, Craddock, Slicer, Franklin, and Ortega is equally applicable here.  Fisher's challenge concerns a plea of guilty to a state felony resulting in a SIS in Missouri state court, which is being considered a conviction for purposes of a later determination regarding the length of Fisher's incarceration.  In determining whether a guilty plea with an SIS constitutes a "conviction" under 18 U.S.C. § 3621(e)(2)(B), and implementing regulation, 28 C.F.R. § 550.55, the BOP properly looked to federal, and not state, law for its determination.  Under federal law, for the purpose determining whether a sentence enhancement is appropriate, a

---

[8]     RSMo. § 610.120 states: "Records required to be closed shall not be destroyed; they shall be inaccessible to the general public and to all persons other than the defendant. . . . The closed records shall be available to: criminal justice agencies for the administration of criminal justice pursuant to section 43.500, RSMo, . . ."  RSMo, § 43.500 defines "Administration of criminal justice", in part as "performance of any of the following activities: detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders."

[9]     Fisher's public defender responded similarly to an inquiry by Fisher about the legal effect of an SIS:

> Strictly and technically speaking, it is not a "conviction" because no sentence was ever imposed. However, it is a prior plea of guilty and as such will remain on your record for many purposes, including law enforcement, impeachment, enhancement of sentences, and so forth. I am sure it appeared on your presentence report. An SIS is by no means "expunged" under the law.  Whatever benefits it had 15 years ago have pretty much been eroded by changes in the law since then.

Petition, Attachment H (letter dated March 11, 2010 from Leon Munday, Assistant Public Defender, to Fisher.).

guilty plea with a SIS qualifies as a prior conviction, and is consistent with RSMo. § 610.120.

Second, courts within the Eighth Circuit have concluded that the BOP's determination that a prior deferred adjudication amounts to a prior conviction precluding early release consideration upon completion of RDAP.  See White v. Sanders, 2007 WL 1488094, at *4 (E.D. Ark. May 18, 2007) ("The BOP should be entitled to consider a finding of deferred adjudication in determining who should, and who should not, be eligible for early release consideration."); Estrada v. Sanders, 2006 WL 3446179, at *11 (E.D. Ark. Nov. 29, 2006), aff'd, Estrada v. Sanders, 223 Fed.Appx. 543 (8th Cir. May 10, 2007) (same).

In White and Estrada, both petitioners filed habeas petitions asserting that their respective entry of a *nolo contrenda* plea in Texas to a felony, which resulted in a deferral of further proceedings without an adjudication of guilt and successful completion of probation (in the case of White) or community supervision (in the case of Estrada), should not have been considered a prior conviction by the BOP for purposes of determining eligibility for early release upon successful completion of RDAP.  The courts in White and Estrada rejected these contentions.  Both courts recognized that under Texas state law, "a defendant reaps the main benefit of deferred adjudication if the period of community supervision is successfully completed without the judge's proceeding to adjudicate guilt. Then the proceedings are dismissed, the defendant is discharged, and the defendant 'may not be deemed [to have] a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense.'" White, 2007 WL 1488094, at *2 (quoting Davis v. State, 968 S.W.2d 368, 369-70

(Tex.Crim.App.1998) (internal citation omitted)); <u>Estrada,</u> 2006 WL 3446179, at *9 (same).  At the same time, the <u>White</u> and <u>Estrada</u> courts acknowledged "the fact that a defendant has previously received community supervision with a deferred adjudication of guilt is admissible 'on the issue of penalty' if a defendant is convicted of a subsequent offense." <u>White,</u> 2007 WL 1488094, at *2 (quoting <u>Davis</u>, 968 S.W.2d 370) (citing Tex. Art. 42.12, Sec. 5(c)(1)); <u>Estrada</u>, 2006 WL 3446179, at *9 (same)<u>.</u>

Both courts then discussed the consequences of a Texas deferred adjudication as addressed by the Fifth Circuit in different contexts – ranging from holdings that a deferred adjudication was not an admissible "conviction" for impeachment purposes or cross examination under Rule 609 of the Federal Rules of Evidence, for a determination as to whether a defendant truthfully stated on firearm purchase form that he had no felony convictions, or within the meaning of the Immigration Reform and Control Act, 8 U.S.C. § 1255a)), to holdings that the deferred adjudication could be used to calculate a defendant's base offense level under the United States Sentencing Guidelines.  <u>See</u> <u>White</u>, 2007 WL 1488094, at *3-4 (quotations and citations omitted); <u>Estrada</u>, 2006 WL 3446179, at *8-10 (same).  In analyzing these decisions, the <u>Estrada </u>court concluded, and the <u>White</u> court agreed:

> The distinction between the line of cases appears to lie in whether consideration of the finding of deferred adjudication is necessary in making correctional decisions. Consideration of a finding of deferred adjudication is not necessary in determining when a limitations period commences nor is it necessary in gauging the truthfulness of a witness. Consideration of a finding of deferred adjudication, though, is necessary in formulating a fair and just period of incarceration.

<u>Estrada</u>, 2006 WL 3446179, at *11; <u>White</u>, 2007 WL 1488094, at *4 (same).

This Court finds is persuaded by the analysis in <u>Estrada</u> and <u>White</u>.  In 1995, Fisher plead guilty to Second Degree Assault in Missouri.  The fact that under Missouri law, the court chooses not to impose a sentence upon her or can give her the opportunity to wipe that conviction off her record for some purposes, does not negate her admission of guilt to Second Degree Assault nor dictate that the BOP must ignore the guilty plea when determining whether she is entitled to consideration for a reduction in the period of incarceration under her federal sentence.  As both <u>Estrada</u> and <u>White</u> stated, the BOP is charged with determining a fair and just period of incarceration.  An adjudication of guilt, whether or not deferred for some purposes, is certainly relevant to making the appropriate correctional determination.  For all of these reasons, this Court finds the BOP's decision to deem a guilty plea with a suspended imposition of sentence as a "conviction" under 28 C.F.R. § 550.55(b)(iv) is reasonable and shall be upheld.

### C.  **BOP's Decision that Second Degree Assault Amounted to an Aggravated Assault**

Fisher maintained that the BOP abused its discretion in rendering her categorically ineligible for early release upon completion of RDAP because Second Degree Assault under Missouri law is not the same as an aggravated assault under 28 C.F.R. § 550.55(b)(iv).  The thrust of her claim is that she was originally charged with First Degree Aggravated Assault and this charge was reduced to Second Degree Assault because she cut her boyfriend with a kitchen knife in response to his attack of her person in her own home and the court deemed her conduct to be an act of "domestic violence self-defense."  Petition at 2.[10]

---

[10]   Fisher acknowledged that her Presentence Investigation Report revealed a "version" of the incident with her boyfriend that was different than that which was described in the court proceedings surrounding her charge and conviction in Missouri.

The BOP uses the FBI's UCR database in order to ensure uniformity in determination of state offenses.  Phillips Decl. ¶ 3, 5; Gov't Resp. at 15.  In determining whether Fisher was categorically ineligible for release, DSCC legal staff compared Second Degree Assault in Missouri with the definition of aggravated assault in the UCR and found them sufficiently similar to preclude early release eligibility:

> According to the FBI's UCR, Aggravated Assault is defined as an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury usually accompanied by use of a weapon or other means likely to produce death or great bodily harm.  According to the Missouri statute, a person commits Second Degree Assault if he/she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of strong passion arising out of adequate cause.

Phillips Decl. at ¶ 3.  Fisher did not contest that the two definitions are sufficiently similar.

Again assuming the BOP's decision is reviewable under the APA, this Court concludes that the BOP's determination that Fisher's Second Degree Assault conviction was sufficiently similar to the definition of Aggravated Assault under the UCR is not an abuse of discretion.  Both statutes require proof that Fisher caused serious physical injury to another person.  Under the federal definition of aggravated assault, use of a weapon is contemplated; in Fisher's case, a knife was used.  As articulated in Gatewood, the BOP has an interest in applying its categorical exclusions uniformly across the board.  560 F.3d at 848-49.  This interest is served by using a nation-wide definition of aggravated assault that compares state law provisions in order to determine

---

Pet. Resp., p. 2 (citing attached Exhibits.).  Suffice it to say that Fisher's version of the incident and her boyfriend's version of the incident are different.  Compare Pet. Resp., Ex. 2, pp. 1-3 (Preliminary Hearing Memo dated May 13, 1995) and Ex. 2, pp. 11-13 (Statement of boyfriend) with pp. 19-26 (statement of Fisher).

eligibility, so that differences among state codes do not undermine uniform application of eligibility criteria. The BOP's determination that Fisher's Second Degree Assault was sufficiently similar to the FBI UCR database definition of "Aggravated Assault" under 28 C.F.R. 550.55(b)(iv) is neither arbitrary, capricious or nor an abuse of discretion.[11]

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.      Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**.

2.      Petitioner's habeas Petition be **DISMISSED WITH PREJUDICE**.

Dated:       June 14, 2011


                                          *s/ Janie S. Mayeron*
                                          JANIE S. MAYERON
                                          United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 28, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[11]    This Court rejects Fisher's request for an evidentiary hearing as she has not alleged with any specificity a factual dispute in his Petition that if resolved in her favor would justify relief. See Shelton v. Ciccone, 578 F.2d 1241, 1245 (8th Cir. 1978) (finding in a § 2241 habeas case that "[w]hen the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied, the District Court must grant an evidentiary hearing.").